1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

8  ALEX KORZYK and BARBARA      )
   KORZYK, husband and wife,    )
9                               )
                                )
10                              )
             Plaintiffs,        )      No. CV-04-343-AAM
11                              )
        vs.                     )      **ORDER DENYING**
12                              )      **MOTIONS TO DISMISS**
                                )
13  SWANK ENTERPRISES, INC.,    )
    a Montana corporation; and DESIGN )
14  WEST ARCHITECTS, P.A., a    )
    Washington Professional Service )
15  Corporation,                )
                                )
16           Defendants.        )
   _____)

17

18     **BEFORE THE COURT** are the Motions To Dismiss for lack of subject matter

19  jurisdiction and for lack of personal jurisdiction/venue (Ct. Rec. 35 and Ct. Rec. 15) filed by

20  defendant Swank Enterprises, Inc. (Swank). Defendant Design West Architects, P.A., (Design

    West), joins in the Motion To Dismiss for lack of subject matter jurisdiction (Ct. Rec. 40).
21
    These motions were heard with oral argument on June 2, 2005. Stephen Haskell, Esq., argued
22
    for the plaintiffs. Brian K. Julian, Esq., argued for defendant Swank
23

24  **I. BACKGROUND**

25     This is a negligence action brought with regard to injuries sustained by plaintiff Alex

26  Korzyk on March 10, 2003, at the University of Idaho (U of I) in Moscow, Idaho. The plaintiffs

27  are residents of the State of Idaho. Mr. Korzyk, a professor, was injured while sitting in his

28

**ORDER DENYING**
**MOTIONS TO DISMISS-**          **1**

office when a shelving unit collapsed and fell on his head.  Plaintiffs' Complaint filed September 23, 2004, names two defendants: Swank Enterprises, Inc. (Swank), and Design West Architects, P.A. (Design West).  Swank is a Montana corporation with its principal place of business in Kalispell.  The Complaint alleges Design West is "a professional services corporation organized under the laws of the State of Washington with offices throughout Eastern, Washington, including Pullman, Washington," and therefore, that this court has subject matter jurisdiction based on diversity of citizenship between plaintiffs (Idaho citizens) and defendants (Montana and Washington citizens respectively).

Swank was the general contractor which installed the aforementioned shelving unit in the new J.A. Albertson School of Business.  The Complaint alleges Swank improperly and negligently installed the unit which fell on Mr. Korzyk's head.  The Complaint further alleges that Design West, as principal architects and "project coordinator," failed to properly inspect the installation of the shelving unit prior to the date of the accident and "knew or should have known of the shelving unit's instability and improper installation."[1]  The Complaint alleges that "[a]s a proximate result of Defendants['] negligence, both jointly and severally, Plaintiff Alex Korzyk sustained severe and permanent personal injuries and sustained loss of employment, permanent wage loss, medical expenses, pain and suffering together with emotional distress and permanent disability.  It also alleges plaintiff Barbara Korzyk has sustained the loss of consortium of her spouse.

In its Answer, Design West asserts a cross-claim against Swank, alleging Swank failed to install the shelving unit pursuant to the project manual, plans and specifications, and was told of this problem by the University of Idaho and Design West before the accident occurred.  Design West alleges Swank's negligence exposes Design West to potential liability upon claims made by the plaintiffs and therefore, it is entitled to indemnity from Swank for  any damages assessed against Design West.

---

[1] Swank as "Contractor" entered into a contract with the University of Idaho (U of I) as "Owner."  The contract designated the architect as Design West.  Apparently, there was a separate contract between the U of I and Design West.

**ORDER DENYING
MOTIONS TO DISMISS-**          **2**

1   On March 14, 2005, Swank filed its Motion To Dismiss for lack of personal jurisdiction

2   (Fed. R. Civ. P. 12(b)(2)) and/or for improper venue (12(b)(3)).  On March 28, co-defendant

3   Design West filed a response in opposition to this motion.  Plaintiffs sought an extension of the

4   time for them to respond to the motion which this court granted in order to allow them to

5   conduct some discovery, specifically depositions of Dewey Swank, Vice-President of Swank

6   Enterprises, and Ned Warnick, Design West's project architect for the U of I project at issue.

7       On April 15, defendant Swank filed a Motion To Dismiss for lack of subject matter

8   jurisdiction (12(b)(1)), asserting that since Design West is, in fact, an Idaho corporation,

9   complete diversity is lacking between the parties (Plaintiffs- Idaho; Defendants- Montana and

10  Idaho).  Design West joined in this motion (Ct. Rec. 40).

11

12  **II. DISCUSSION**

13      **A. Subject Matter Jurisdiction**

14      Plaintiffs now acknowledge that Design West is an Idaho corporation and therefore,

15  diversity jurisdiction is lacking.  To salvage diversity jurisdiction, however, plaintiffs request an

16  order from the court voluntarily dismissing Design West pursuant to Fed. R. Civ. P. 41(a)(2) so

17  they can commence a "parallel action" against Design West in Whitman County Superior Court.

18  Plaintiffs represent that Design West would not oppose such a dismissal.

19      Plaintiffs' reliance on Rule 41(a)(2) appears misplaced because that pertains to

20  "Dismissal of Actions," while what the plaintiffs seek is to drop a party.  Fed. R. Civ. P. 21

21  provides that "[p]arties may be dropped or added by order of the court on motion of any party or

22  of its own initiative at any stage of the action and on such terms as are just."  This court can

23  grant leave to dismiss Design West as a defendant so long as Design West is not an

24  "indispensable" party to the litigation.  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826,

25  836-37, 109 S.Ct. 2218 (1989).

26      First, the court must determine whether Design West is a "necessary" party to this

27  litigation.  *Pit River Home and Agr. Co-op Ass'n v. United States*, 30 F.3d 1088, 1098-99 (9th

28  Cir. 1994).  Under Fed. R. Civ. P. 19(a), non-diverse parties are "necessary" if: (1) the court is

**ORDER DENYING
MOTIONS TO DISMISS-**          **3**

1    unable to grant complete relief in the absence of the non-diverse parties; or (2) the non-diverse

2    parties have legally protected interests in the outcome of the litigation, and any judgment may

3    either (a) harm the non-diverse parties' ability to protect their interests, or (b) expose a

4    remaining party to a substantial risk of incurring double, multiple, or otherwise inconsistent

5    obligations.  If the non-diverse parties are not "necessary," they can be dropped from the

6    litigation and diversity jurisdiction is preserved between the remaining parties.

7         If, however, the non-diverse parties are "necessary," then, pursuant to Rule 19(b), it must

8    be determined if those parties are sufficiently "indispensable" that they must remain, even

9    though their presence destroys subject matter jurisdiction (in which case, the entire action must

10   be dismissed).  *Pit River Home*, 30 F.3d at 1098-99.  Under Rule 19(b), four factors must be

11   considered: (1) to what degree a judgment rendered in the absence of the non-diverse parties

12   might be prejudicial either to them or to the remaining parties; (2) the extent to which the

13   prejudice can be lessened or avoided by placing protective provisions in the judgment, by

14   shaping the relief, or by other measures; (3) whether a judgment made in the absence of non-

15   diverse parties will be adequate; and (4) whether plaintiffs will have an adequate remedy if the

16   action is dismissed for nonjoinder.  *Id*.

17        Swank asserts Design West is an "indispensable" party, although Design West does not

18   make such an assertion as evidenced by its apparent consent to being voluntarily dismissed from

19   this action.  Swank notes that plaintiffs assert "negligence, jointly and severally" against both

20   Swank and Design West and argues that "[s]uch an allegation of joint and several liability

21   certainly lends credence to the argument that Design West is an indispensable party."  Swank

22   also contends that "judicial economy, multiplicity of suits and possible inconsistent verdicts all

23   clearly point to the fact that Design West is an indispensable party."

24        Tortfeasors facing joint and several liability are not parties who must be joined in a single

25   lawsuit.  *Temple v. Synthes Corp.*, 498 U.S. 5, 7, 111 S.Ct. 315 (1990).  Because each tortfeasor

26   is jointly and severally liable, the plaintiff can pick and choose whom to sue and if the plaintiff

27   elects to sue less than all of them, those sued cannot compel joinder of the other tortfeasors.

28   *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 207

**ORDER DENYING
MOTIONS TO DISMISS-**                **4**

1   (D.C. Cir. 1981).  Rule 19 does not require the joinder of joint tortfeasors.  *Bank of America v.*

2   *Hotel Rittenhouse Assoc.*, 844 F.2d 1050, 1054 (3ʳᵈ Cir. 1988).  Indeed, a defendant's possible

3   right of reimbursement, indemnity or contribution against an absent party is not sufficient to

4   make the absent party indispensable to the litigation.  *Nottingham v. General Am.*

5   *Communications Corp.*, 811 F.2d 873, 880 (5ᵗʰ Cir. 1987); *Field v. Volkswagenwerk A.G.*, 626

6   F.2d 293, 298 (3ʳᵈ Cir. 1980).

7          Here, plaintiffs did not have to sue Design West.  They could have sued just Swank.

8   Swank's possible right of reimbursement, indemnity or contribution against Design West does

9   not make Design West an indispensable party.  If Swank is concerned enough about Design

10  West's absence, it can file a third-party claim against Design West under Fed. R. Civ. P. 14(a) as

11  part of the federal action.  Rule 14 "permits a party defendant who claims a right of indemnity

12  from third persons to protect itself from potentially inconsistent verdicts by impleading the

13  absent party . . ."  *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 412 (3ʳᵈ

14  Cir. 1993).  A third-party complaint would not defeat diversity jurisdiction because a federal

15  court would have jurisdiction over the third-party claim pursuant to 28 U.S.C. 1367(a)

16  (supplemental jurisdiction).  *Field*, 626 F.2d at 298-99.

17         Swank does not identify with any specificity what the "possible inconsistent verdicts may

18  be" and besides that, under Rule 19(a), the concern is not with  "possible inconsistent verdicts,"

19  but rather with there being a "**substantial risk**" of a remaining party incurring "inconsistent

20  obligations."  Swank is perhaps concerned that what could happen is it will prevail in the federal

21  action, but Design West will still sue Swank as a third-party defendant in the proposed Whitman

22  County Superior Court action, and if Design West is found liable to plaintiffs in that action,

23  Swank will be found liable to Design West based on a theory of derivative liability.  That does

24  not necessarily make for an inconsistent obligation, however, because in the federal action,

25  Swank will have been absolved of direct liability to the plaintiffs for negligence, whereas in the

26

27

28

**ORDER DENYING**
**MOTIONS TO DISMISS-**          **5**

1   proposed Whitman County action, it will have been found secondarily liable to Design West.[2]

2       "Judicial economy" and "multiplicity of suits" are not mentioned in Rule 19 and are not

3   relevant to the analysis.  Certainly, Swank would prefer avoiding the possibility of having to

4   litigate in two forums against different parties (in the federal action as the defendant; in Whitman

5   County Superior Court as a third-party defendant with Design West as the third-party plaintiff).

6   The standards for determining whether Design West must remain a party to the captioned

7   litigation, however, "are not the relative convenience of the parties but those prescribed by Rule

8   19."  *Field*, 626 F.2d at 301.

9       The court finds Design West is not a "necessary" party under the Rule 19(a) analysis.

10  Plaintiffs can obtain complete relief without Design West being present and so can Swank.  If

11  Swank is concerned that it cannot, its option is to file a third-party claim against Design West.

12  A judgment in the federal action will not harm Design West's ability to protect its interests since

13  all that will be adjudicated is Swank's liability to the plaintiffs.  Design West can adequately

14  protect its interests in the proposed Whitman County action (adjudicating its direct liability to

15  plaintiffs) and, of course, it can also protect its interests in the federal action if it is named a

16  third-party defendant (adjudicating secondary liability to Swank if Swank is found directly liable

17  to plaintiffs).

18      Because Design West is not a "necessary" party under Rule 19(a), it is not an

19  "indispensable" party under Rule 19(b).  Therefore, Design West will be dismissed from this

20  action pursuant to Fed. R. Civ. P. 21, preserving diversity jurisdiction as between plaintiffs

21

22      [2]  A third-party plaintiff may not present a claim of the third-party defendant's liability to
23  the plaintiff.  Rather, it must set forth a claim of secondary liability such that, if the third-party
    plaintiff is found liable to the original plaintiff, the third-party defendant will be liable to the
24  third-party plaintiff under a theory of indemnification, contribution, or some other theory of
    derivative liability recognized by the relevant substantive law.  *Janney*, 11 F.3d at 412.  A theory
25  that another party is the correct defendant is not appropriate for a third-party complaint.  A
    defendant sued for negligence cannot implead a third party whose negligence was allegedly
26  totally responsible for a plaintiff's injury.  When a third party's conduct furnishes a complete
27  defense against the defendant's liability, the defendant may raise that conduct defensively in his
    answer, but may not use it as a foundation for impleader.
28

**ORDER DENYING**
**MOTIONS TO DISMISS-**          **6**

1  (citizens of Idaho) and Swank (citizen of Montana).

2

3  **B.  Personal Jurisdiction**

4  Absent one of the traditional bases for personal jurisdiction- presence, domicile, or

5  consent- due process requires a defendant have "certain minimum contacts with [the forum state]

6  such that the maintenance of the suit does not offend traditional notions of fair play and

7  substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154

8  (1945).  The forum state must have a sufficient relationship with the defendant and the litigation

9  to make it reasonable to require defendant to defend the action in a federal court located in that

10  state.  The purpose of the "minimum contacts" requirement is to protect the defendant against the

11  burdens of litigating at a distant or inconvenient forum and insure that states do not reach out

12  beyond the limits of their sovereignty imposed by their status in a federal system.  *World-Wide*

13  *Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559 (1980).  "Only contacts

14  occurring prior to the event causing the litigation may be considered.*" Farmers Ins. Exch. v.*

15  *Portage LaPrairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990).

16  The extent to which a federal court can exercise personal jurisdiction, absent the

17  traditional bases of consent, domicile or physical presence, depends on the nature and quality of

18  defendant's "contacts" with the forum state.  If defendant's activities in the forum state are

19  "substantial, continuous and systematic," a federal court can, if permitted by the state's long-arm

20  statute, exercise jurisdiction as to any cause of action, even if unrelated to defendant's activities

21  within the state.  *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 446-47, 72 S.Ct.

22  413 (1952).  General jurisdiction over a nonresident defendant is proper when the defendant's

23  actions in the state are so substantial and continuous that justice allows the exercise of

24  jurisdiction even for claims not arising from the defendant's contacts within the state.  *Raymond*

25  *v. Robinson*, 104 Wn.App. 627, 633, 15 P.3d 697 (2001).  RCW 4.28.080 (10) authorizes general

26  jurisdiction over a nonresident defendant if the defendant is transacting substantial and

27  continuous business within the state of such character to give rise to a legal obligation.  *Id*.  Even

28  if a defendant is engaged in substantial and continuous business within the forum state, due

**ORDER DENYING**
**MOTIONS TO DISMISS-**          **7**

process requires that the exercise of jurisdiction in the particular case be reasonable, that is, not

be a denial of "fair play and substantial justice." *Amoco Egypt Oil Co. v. Leonis Navigation Co.,*

*Inc.*, 1 F.3d 848, 851, fn. 2 (9th Cir. 1993).[3]

Even if a non-resident defendant's "contacts" with the forum state are not sufficiently

"substantial, continuous and systematic" for general jurisdiction, the defendant may still be

subject to jurisdiction on claims related to its activities there.  This "limited" or "specific"

personal jurisdiction requires a showing that:  (1) the out-of-state defendant purposefully

directed its activities toward residents of the forum state or otherwise established contacts with

the forum state; (2) plaintiff's cause of action arises out of or results from the defendant's forum-

related contacts; and (3) the forum's exercise of personal jurisdiction in the particular case must

be reasonable in that it must comport with "fair play and substantial justice." *Burger King Corp.*

*v. Rudzewicz*, 471 U.S. 462, 473-76, 105 S.Ct. 2174 (1985).  This specific personal jurisdiction is

recognized by Washington's long-arm statute, RCW 4.28.185, which provides:

> (1) Any person, whether or not a citizen or resident of this state,
> who in person or through an agent does any of the acts in this
> section enumerated, thereby submits said person . . . to the jurisdiction
> of the courts of this state **as to any cause of action arising from the
> doing of any said acts**:
>
> (a) The transaction of any business within this state;
>
> (b) The commission of a tortious act within this state;
>
> (c) The ownership, use, or possession of any property whether
> real or personal situated in this state;
>
> (d) Contracting to insure any person, property or risk located
> within this state at the time of contracting;
>
> . . . .
>
> (3) Only causes of action arising from acts enumerated herein

---

[3] To establish personal jurisdiction over Swank, plaintiffs must show that Washington's jurisdictional statute confers jurisdiction over Swank and that the exercise of jurisdiction accords with federal constitutional principles. *Amoco*, 1 F.3d at 850.  Washington's statutes- 4.28.080 and 4.28.185- are co-extensive with federal constitutional standards and thus, statutory and constitutional standards merge into a single due process test. *Id.* at 851.

**ORDER DENYING
MOTIONS TO DISMISS-**          **8**

may be asserted against a defendant in an action in which
jurisdiction over him is based upon this section.

(Emphasis added).

The defendant must have purposefully directed its activities at forum residents, or purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of local law. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228 (1958). This protects against a non-resident defendant being haled into local courts solely as the result of "random, fortuitous or attenuated" contacts. *Burger King*, 471 U.S. at 475. "[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. The "purposeful availment" requirement is satisfied "where the (forum-related) contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." *Burger King*, 471 U.S. at 475. Courts find such a connection where non-resident defendants  "purposefully direct" their activities toward forum residents." *Calder v. Jones*, 465 U.S. 783, 789-90, 104 S.Ct. 1482 (1984). Contracting parties who "reach out beyond one state to create continuing relationships and obligations with citizens of another state" may be found to have "purposefully availed" themselves of benefits and protections under the other state's laws. *Burger King*, 471 U.S. at 473. Provided a "substantial connection" with the forum is created, even a single act may support specific, limited personal jurisdiction over a non-resident. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199 (1957).

In determining the "reasonableness" of exercising personal jurisdiction, whether general or specific, the following factors must be considered:  (1) the extent of defendant's purposeful interjection; (2) the burden on defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution to the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Core-Vent Corp. v. Nobel Inds. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1994). No one

**ORDER DENYING**
**MOTIONS TO DISMISS-**          **9**

1  factor is dispositive and the court must balance all of the factors. *Id*. at 1488. The

2  "reasonableness" requirement may defeat local jurisdiction even if defendant has purposefully

3  engaged in forum-related activities. *Burger King*, 471 U.S. at 477-78. The burden is on the

4  defendant to prove the forum's exercise of jurisdiction would not comport with "fair play and

5  substantial justice." *Amoco*, 1 F.3d at 851-52. If a non-resident has deliberately engaged in

6  significant activities within the forum state, "it is presumptively not unreasonable to require him

7  to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476. And

8  furthermore, if defendant "purposefully had directed his activities at forum residents . . . he must

9  present a compelling case" that the exercise of jurisdiction would in fact be unreasonable. *Id*. at

10  477.

11      Although defendant is the moving party on a motion to dismiss for lack of personal

12  jurisdiction, plaintiffs are the ones who invoked the court's jurisdiction and bear the burden of

13  proving the necessary jurisdictional facts. *Flynt Distrib. Co., Inc., v. Harvey*, 734 F.2d 1389,

14  1392 (9th Cir. 1984). Motions to dismiss under Rule 12(b)(2) may test either the plaintiffs'

15  theory of jurisdiction or the facts supporting the theory. In evaluating plaintiffs' jurisdictional

16  theory, the court need only determine whether the facts alleged, if true, are sufficient to establish

17  jurisdiction. No evidentiary hearing or factual determination is necessary. *Credit Lyonnais*

18  *Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 153 (2nd Cir. 1999). Where the motion

19  challenges the facts alleged, however, it must be decided based on competent evidence such as

20  declarations and discovery materials. *Data Disc, Inc. v. Systems Technology*, 557 F.2d 1280,

21  1289 n. 6 (9th Cir. 1977).

22      The facts appear to be uncontroverted in this case, and this is confirmed by the fact that

23  no party has requested an evidentiary hearing. Where a district court bases it jurisdictional

24  ruling on affidavits and discovery materials without holding an evidentiary hearing, dismissal is

25  appropriate only if the plaintiff has failed to make a prima facie showing of personal jurisdiction.

26  *Amoco*, 1 F.3d at 850.

27      **1. Specific Personal Jurisdiction**

28      Plaintiffs contend there is specific personal jurisdiction in Washington because their

**ORDER DENYING**
**MOTIONS TO DISMISS-**          **10**

1    negligence cause of action arises out of defendant Swank's transaction of business with Design

2    West in Pullman, Washington.  RCW 4.28.185(1)(a).  It does not appear plaintiffs specifically

3    contend that any tortious act was committed in the State of Washington by defendant Swank

4    such as to subject Swank to personal jurisdiction in this state.  RCW 4.28.185(1)(b).

5           To determine whether specific jurisdiction exists under RCW 4.28.185(1)(a), the plaintiff

6    must establish three factors: 1) Swank must have purposefully done some act or consummated

7    some transaction in Washington; 2) the cause of action must arise from, or be connected with,

8    such act or transaction; and 3) the exercise of jurisdiction must not offend traditional notions of

9    fair play and substantial justice.  *Raymond*, 104 Wn. App. at 637.  The focus is on the quality and

10   nature of the activities within the forum state, not the number of acts or some other mechanical

11   standard.  *Id*.

12          There was no contract directly between Swank and Design West.  Design West, however,

13   was specifically designated as the architect in the "Standard Form Of Agreement Between

14   Owner and Contractor."[4]  While the contract listed Design West's location as being in Nampa,

15   Idaho, communication between Design West and Swank occurred through Design West's

16   Pullman office where Project Architect Ned Warnick was located.  In June 2002, Swank sent a

17   proposal for installation of additional office shelving to Design West in Pullman.  (Ex. 3 to

18   Affidavit of Stephen Haskell, Ct. Rec. 42).  On July 26, 2002, a fax transmittal from the Pullman

19   office to Swank advised Swank that several of the office shelving installations had already

20   failed.  Design West stated that it understood Swank had installed the shelf brackets using

21   drywall anchors as opposed to anchoring to a solid backing as required by the specifications.

22   Swank was asked to provide the required anchorage.  Swank responded with a fax transmittal to

23   Design West's Pullman office on October 16, 2002 advising that "[w]e have installed all the

24   shelf brackets that we can.  All Brackets we are aware of which were not in the studs have been

25   replaced."  (Ex. D to Affidavit of Ned Warnick, Project Architect for Design West, Ct. Rec. 21).

26   

27          [4]  There is a provision in the contract between the U of I and Swank which provides for

28   indemnification of the architect for negligence by Swank.

**ORDER DENYING
MOTIONS TO DISMISS-**          **11**

1    Apparently, Swank sent a memo to Design West's Pullman office on or about October 22,

2    indicating that all rooms with shelving had been inspected.  (Exs. 6, 7 and 8 to Haskell

3    Affidavit).  Swank also communicated with Warnick at the Design West offices in Pullman by

4    correspondence dated December 9, 2002, with regard to adding standards and brackets for "the

5    change order shelves as well as the base contract units."  (Ex. 9 to Haskell Affidavit).  In a fax

6    transmittal from Pullman, dated March 10, 2003, Warnick advised Swank the "added shelving in

7    Room 117 [Korzyk's office] failed today, the shelving was anchored only with drywall anchors."

8    Warnick asked that all the shelves be reviewed.  (Ex. 1 to Haskell Affidavit).  Swank responded

9    by letter dated March 25, 2003, stating:

10              New shelving units are being installed with generally three brackets.
              Two each in metal studs and one in the center drywall anchors.

11
              Ed & Paul have gone through each room today and looked at each

12            shelf with problems, they all now appear to be solid.

13    (Ex. 12 to Haskell Affidavit).

14          At his deposition, Warnick testified he was unsure whether he had discussions in the

15    Pullman office with Ed Adams, an employee of Swank, with regard to add-on shelving units, but

16    Adams definitely did stop by the office and discuss certain things with Warnick.  (Ex. 14 to

17    Haskell Affidavit).

18          At his deposition, Dewey Swank testified he sent a couple of letters to Warnick before or

19    after the March 10 accident, expressing concern about the design of the shelves.  (Ex. 13 to

20    Haskell Affidavit).  Swank acknowledged interaction with Warnick in his Pullman office by

21    letter, fax and telephone, some of which would have related to the shelving issues.  (Ex. 15 to

22    Haskell Affidavit).

23          There is no evidence that Swank consummated any particular transaction with Design

24    West in Pullman (i.e., executed a contract there).  There is no question, however, that Swank

25    purposefully communicated with Design West in Pullman regarding the shelving issues.  It is not

26    clear who initiated the contact (the Design West Pullman office or Swank), but even though that

27    is a relevant factor, it is not determinative.  *Raymond*, 104 Wn. App. at 638.  Swank had to know

28    at the time it contracted with the University of Idaho (September 2000) that the architect, Design

**ORDER DENYING**
**MOTIONS TO DISMISS-**          **12**

1   West, had an office in Pullman and that the architect's involvement in the project would

2   originate from this office, a mere eight miles away from the U of I.  Swank had to reasonably

3   expect  its interaction with Design West would involve the Pullman office.  In his affidavit,

4   Warnick states: "Design West Architects' offices, now and at the time of the aforementioned

5   project, are located in Pullman, Washington."  (Warnick Affidavit at p. 2, Paragraph 5).  Swank

6   "purposefully " interacted with Design West in Washington.  Its purpose was to coordinate

7   construction with the architect including, among other things, the installation of shelving.

8          Swank's contacts with Design West in Pullman were not "random, fortuitous or

9   attenuated" contacts over which it had no control.  *Burger King*, 471 U.S. at 476.  Swank's

10  contacts with the Pullman office were such that it could reasonably anticipate being haled into

11  either Whitman County Superior Court or the U.S. District Court for the Eastern District of

12  Washington.  *World-Wide Volkswagen Corp.*, 444 U.S. at 297.  Swank purposefully availed

13  itself of the privilege of conducting activities within the State of Washington, invoking the

14  benefits and protections of this state's laws.  *Raymond*, 104 Wn. App. at 637.

15         There is no doubt that plaintiffs' negligence action against Swank, if not arising from

16  these acts, is at least "connected with" them.[5]  Plaintiffs' Complaint specifically alleges Swank

17  failed to "insur[e] shelving units were either affixed to studs or wooden backing per the

18  specifications prepared by . . . Design West, P.A."  (Complaint at Paragraph 8, p. 3).  The very

19  subject of the aforementioned communications between Swank and the Pullman office of Design

20  West concerned whether Swank had indeed followed Design West's specifications.

21         The final consideration is whether exercise of "specific" personal jurisdiction over

22  Swank would offend traditional notions of fair play and substantial justice in light of the quality,

23  nature, and extent of Swank's activity in the state; the relative convenience of the parties; the

24  benefits and protections of the laws afforded the respective parties; and the basic equities of the

25  _____

26        [5]  As Swank points out, the mere fact that communications concerning adjustable
    shelving occurred in Washington is not enough.  There has to be a "connection" between those
27  communications and the negligence claim.  Such a "connection" was lacking in *Banton v.
    Opryland U.S.A., Inc.*, 53 Wn. App. 409, 767 P.2d 584 (1989).  It is not lacking here.
28

**ORDER DENYING**
**MOTIONS TO DISMISS-**          **13**

1  situation. *Raymond*, 104 Wn.App. at 641. These are essentially the same as the factors referred

2  to above and set forth in the *Core-Vent* case: (1) the extent of defendant's purposeful

3  interjection; (2) the burden on defendant in defending in the forum; (3) the extent of conflict with

4  the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute;

5  (5) the most efficient judicial resolution to the controversy; (6) the importance of the forum to

6  plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative

7  forum.

8      Swank purposefully interjected itself into the State of Washington through its interaction

9  with Design West's Pullman office. With regard to the burden on Swank in defending in this

10  forum, it is necessary to consider that if this suit does not take place in the Eastern District of

11  Washington, it will take place in the District of Idaho. There is the possibility it could be heard

12  in Moscow, although Boise is also a possibility. 28 U.S.C. §92. If this case remains in federal

13  court in the Eastern District of Washington, the trial will be held in Spokane. Boise is obviously

14  much further from Kalispell, Montana than Spokane. Furthermore, Spokane is closer to

15  Kalispell than Moscow. Moreover, it would seem that considering interstate highway access and

16  transportation alternatives (air, rail, etc.), Spokane would actually be more convenient for Swank

17  than Moscow.

18      Swank does not assert that exercise of jurisdiction by a Washington federal court will

19  conflict with Montana's sovereignty. Swank does contend that the State of Washington has very

20  little interest in this dispute. Even with Design West's dismissal from the federal action, this

21  litigation will still involve the issue of whether Swank failed to follow Design West's

22  specifications regarding installation of the shelving. To that extent, Washington has some

23  interest in adjudicating the dispute between Swank and the plaintiffs. Furthermore, an Eastern

24  District of Washington federal court sitting in diversity would apply the law of the State of

25  Washington, including Washington's choice of law rules which, in all likelihood, will dictate

26  application of Idaho negligence law since the accident occurred in Idaho. *Klaxon Co. v. Stentor*

27  *Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020 (1941). In personal injury cases, the law of the state

28  where the injury occurred applies unless another state has a greater interest in determination of

**ORDER DENYING**
**MOTIONS TO DISMISS-**          **14**

1  that particular issue. *Martin v. Goodyear Tire & Rubber Co.*, 114 Wn.App. 823, 829, 61 P.3d
2  1196 (2003).

3      Swank has not established that traditional notions of fair play and substantial justice
4  would be offended if this court exercised specific personal jurisdiction over Swank.

5      **2. General Personal Jurisdiction**

6      For there to be general jurisdiction over Swank, its activity level has to be significantly
7  greater than the contacts described above (communications between Swank and Design West's
8  Pullman office). The activity level must be "substantial, continuous, and systematic." With
9  regard to general jurisdiction, contacts are measured over a period of years before the claim
10  arose or the action is filed because the inquiry necessarily requires the court evaluate the
11  defendant's contacts with the forum state over time. *Noonan v. Winston Co.*, 135 F.3d 85, 95 (1st
12  Cir. 1998); *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2nd Cir.
13  1996). For the purpose of ascertaining whether general jurisdiction exists, this court is not
14  limited to a snapshot of the contacts existing at the time the plaintiffs' claim arose in March
15  2003.

16      Plaintiffs note that through the 1990s, Swank was involved in a number of construction
17  projects in the State of Washington, specifically eastern Washington, totaling $77 million in cost.
18  The most recent project completed was Spokane's Mead High School in November 2001. (Ex.
19  16 to Haskell Affidavit). Plaintiffs also observe that Swank has been registered as a corporation
20  in Washington since 1990, has retained an active business license in this state, and its registered
21  agent is an attorney with a Spokane law firm. (Ex. 17 to Haskell Affidavit). A total of 17
22  Washington subcontractors were utilized by Swank on the U of I construction project. (Ex. 19 to
23  Haskell Affidavit). Plaintiffs also point out that in connection with the Mead High School
24  project, and a different project at the U of I, Swank has been involved in litigation in Spokane
25  County Superior Court as a defendant and as a third-party plaintiff respectively.

26      The fact Swank has not been involved in a construction project in Washington since 2001
27  is not determinative of whether general jurisdiction exists. Over a ten year period from 1991 to
28  2001, Swank was involved in one or more construction projects in the State of Washington. (See

**ORDER DENYING**
**MOTIONS TO DISMISS-          15**

Ex. 16 to Haskell Affidavit).  That is "continuous" and it is also "substantial" considering the

cost of these projects.  Swank cannot deny that it seeks to do business in Washington and would

undoubtedly get involved in another construction project in Washington if and when the

opportunity arises.  It has not had a Washington project since 2001, a mere four years ago,

presumably because it has had business elsewhere (i.e., the U of I project at issue in this

litigation), or because it simply has not been the successful bidder on Washington projects.

Swank is a general construction contractor.  Swank cannot argue that the type of work it has

done in Washington is either "collateral" or "incidental" to its Montana business, or that said

work has been "limited."

Swank cites *Rich v. Chicago, Burlington & Quincy Railway Co.*, 34 Wash. 14, 74 P.

1008, 1009 (1904), which held that "doing business" within the state means a corporation "must

transact within the state some substantial part of its ordinary business, continuous in the sense

that it is distinguished from merely casual or occasional transactions, and it must be of such

character as will give rise to some form of legal obligation."  According to Swank, it focuses the

majority of its attention on Montana and based on *Rich*, it is plaintiffs' burden to prove that

revenues earned by Swank in Washington between 1991 and 2001 amounted to a substantial part

of Swank's ordinary business revenue from all other projects, regardless of location.  Swank

asserts that use of its gross construction figures over a ten year period ($77 million), without

acknowledging that it has not worked in Washington since 2001, is insufficient to subject it to

general jurisdiction.

There is no reason to doubt Swank does a lot of business in Montana and the record does

not provide an answer to the question of how Swank's revenues from its Washington projects

during 1991-2001 compare to its overall revenues from all projects during the same period.  It is

not critical, however, to know the answer.  Indeed, Swank does not provide an answer,  nor does

it deny its Washington revenues during 1991-2001 were "substantial" in comparison to its

overall revenues.  No Washington case, including *Rich*, has specifically held that determination

of whether a corporation's business is "substantial" in Washington depends on ascertaining the

precise percentage of that business compared to business in other states and whether that

**ORDER DENYING**
**MOTIONS TO DISMISS-**            **16**

1   percentage exceeds some particular threshold.  The determination of "substantial" is not

2   formulaic.

3        Swank notes that a foreign corporation's obtaining a certificate of authority to do

4   business in Washington, and the appointment of a registered agent to transact business in

5   Washington, do not constitute consent to general personal jurisdiction.  *Washington Equipment*

6   *Manufacturing Company, Inc. v. Concrete Placing Company, Inc.*, 85 Wn.App. 240, 243, 931

7   P.2d 170 (1997).  Plaintiffs do not contend that Swank consented to personal jurisdiction.  They

8   do argue that Swank's obtaining of a license to do business in Washington, and its appointment

9   of a registered agent, in conjunction with the amount of business it has conducted in this state

10  over a ten year period, is sufficient for general jurisdiction purposes.

11       The fact Swank hired 17 Washington subcontractors for the U of I project which is the

12  subject of this litigation is not significant by itself, although it may well serve as confirmation of

13  the substantial, continuous and systematic nature of Swank's involvement in Washington

14  construction projects between 1991 and 2001.  The same goes for the Spokane County Superior

15  Court lawsuit in which Swank was involved regarding the Mead High School project.  Swank

16  and its bonding agent were sued by the State of Washington for recovery of unpaid wages,

17  specifically wages that a Swank subcontractor had not paid to its employees.  This lawsuit is

18  some evidence that because of its involvement in construction projects in Washington, Swank

19  has incurred legal obligations in this state.

20       Because of Swank's "doing business" in Washington, it is proper to exercise general

21  personal jurisdiction over Swank, provided it is otherwise reasonable to do so.  *MBM Fisheries,*

22  *Inc. v. Bollinger Machine Shop and Shipyard, Inc.*, 60 Wn.App. 414, 418-420, 804 P.2d 627

23  (1991).  The reasonableness factors include: (1) the interest of the State in providing a forum for

24  its residents; (2) the ease with which the one asserting jurisdiction could gain access to another

25  forum; (3) the amount, kind, and continuity of activities carried on by the foreign corporation in

26  the State of Washington; (4) the significance of the economic benefits accruing to the foreign

27  corporation as a result of activities purposefully conducted in the State of Washington; and (5)

28  the foreseeability of injury resulting from the use of the foreign corporation's product.  *Crose v.*

**ORDER DENYING**
**MOTIONS TO DISMISS-**     **17**

1  *Volkswagenwerk Aktiengesellschaft*, 88 Wn.2d 50, 57, 558 P.2d 764 (1977).

2      As Swank points out, the plaintiffs are not residents of Washington and it is true they

3  could have originally commenced the suit against Swank either in Latah County District Court in

4  Moscow, or in U.S. District Court in Idaho (assuming Design West had not been named a co-

5  defendant).  If the action before this court were now dismissed, however, and plaintiffs re-filed

6  in either of the Idaho courts, there would be a question about a statute of limitations bar since

7  Idaho has a two year limitations period for personal injury actions which, in this case, expired in

8  March 2005.  Idaho Code §5-219(4).  It is not clear whether there would be any tolling

9  considerations due to the pendency of the suit in this court.  Furthermore, factors (3) and (4)

10  weigh in favor of the exercise of general personal jurisdiction for reasons discussed above.

11  Finally, since it is reasonable to exercise specific personal jurisdiction over Swank, it is also

12  reasonable, and would not offend traditional notions of fair play and substantial justice, to

13  exercise general personal jurisdiction over Swank.

14

15      **C. Venue**

16      Venue is proper in the Eastern District of Washington because defendant Swank is

17  amenable to personal jurisdiction in this district.  28 U.S.C. §1391(c) ("For purposes of venue

18  under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial

19  district in which it is subject to personal jurisdiction at the time the action is commenced").

20  Pursuant to 28 U.S.C. §1391(a)(1), a civil action founded on diversity of citizenship may be

21  brought in a judicial district where any defendant resides, if all defendants reside in the same

22  State.[6]

23

24      **D. Convenience Transfer**

25      28 U.S.C. §1404(a) states that for the convenience of parties and witnesses, and in the

26  _____

27  [6] With the dismissal of Design West, there is only one defendant left, that being Swank.

28

**ORDER DENYING**
**MOTIONS TO DISMISS-**      **18**

interest of justice, a district court may transfer any civil action to another district or division where it might have been brought.  With the dismissal of Design West, this action might have been brought in the District of Idaho.[7]  Subject matter jurisdiction exists in the District of Idaho.  Swank concedes it is subject to personal jurisdiction in Idaho.  Venue is proper in Idaho pursuant to 28 U.S.C. §1391(b)(1) and (2)(Idaho is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred).

Plaintiffs are not seeking a convenience transfer and defendants have not made a formal motion for a transfer on this basis.  At oral argument, the undersigned advised counsel he was authorized and willing to sit as the presiding judicial officer in this case in the District of Idaho, assuming the trial is held in Moscow.  Plaintiffs' counsel seemed to suggest that Spokane was just as convenient to his clients as Moscow, if not more so.  Defendant Swank's counsel indicated the trial should be held in Moscow as a jurisdictional matter, but did not specifically comment on whether Spokane or Moscow would be more convenient for his client, assuming jurisdiction existed in both forums.  For reasons discussed above, this court does not believe Spokane would be significantly more inconvenient for Swank as compared to Moscow and indeed, may even be more convenient.  Nevertheless, neither Swank or the plaintiffs are foreclosed from making motions to transfer under §1404(a), or from making a joint motion to that effect, with the assumption being that if a transfer is granted, trial will be held in Moscow before the undersigned sitting as a judicial officer for the District of Idaho.

## III.  CONCLUSION

Design West is **DISMISSED** from this action pursuant to Fed. R. Civ. P. 21.  Accordingly, diversity jurisdiction is preserved and Swank's Motion To Dismiss for lack of subject matter jurisdiction (Ct. Rec. 35) is **DENIED**.  Swank's Motion To Dismiss for lack of

---

[7]  Unlike 28 U.S.C. §1631, there is no language in §1404(a) that the action could have been brought in the proposed transferee district "at the time it was filed."

**ORDER DENYING
MOTIONS TO DISMISS-**          **19**

1  personal jurisdiction/improper venue (Ct. Rec. 15) is **DENIED**.  The parties shall bear their own

2  costs and fees related to these motions.

3

4      **IT IS SO ORDERED**.  The District Executive is directed to enter this order and forward

5  copies to counsel.

6

7      **DATED** this __9th___ of June, 2005.

8

9          ___s/ Alan A. McDonald_____
               ALAN A. McDONALD
10         Senior United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER DENYING**
**MOTIONS TO DISMISS-            20**